**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 21 B 11947 |
| MICHAEL LAWRENCE HARSHFIELD, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| ———————————————— | ) | |
| | ) | |
| BERT FRIEDMAN and JULIE SOLOMON, | ) | |
| | ) | |
| Plaintiffs, | ) | Adv. 22 A 8 |
| | ) | |
| v. | ) | |
| | ) | Judge David D. Cleary |
| MICHAEL LAWRENCE HARSHFIELD, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiffs Bert Friedman ("Friedman") and Julie Solomon ("Solomon") (collectively,

"Plaintiffs") filed a four-count complaint ("Complaint") against Michael Lawrence Harshfield

("Defendant" or "Harshfield"), seeking a finding that Defendant's debt to them is

nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6).  This matter comes before

the court on Defendant's motion to dismiss ("Motion to Dismiss") all four counts of the

Complaint.  The court entered a briefing schedule, and the parties timely filed their response

("Response") and reply ("Reply").  The court then took the matter under advisement.

Having reviewed the papers submitted, the court will grant the Motion to Dismiss as to

Counts I, III and IV, and deny the Motion to Dismiss as to Count II.  Plaintiffs will be allowed

leave to amend the Complaint as set forth in this Memorandum Opinion.

## I.    JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

## II.    BACKGROUND

In resolving a motion to dismiss, the court considers well-pleaded facts and the reasonable inferences drawn from them in the light most favorable to the plaintiff. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Every allegation that is well-pleaded by a plaintiff is taken as true in ruling on the motion. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016). For purposes of deciding this motion, the court accepts the following well-pleaded facts as true:

Friedman met Defendant around May 2017. Defendant told Friedman that he had secured patents relating to cannabis and that he managed Blackline Land Management Group LLC ("Blackline"), a company operating in the cannabis space. (Complaint, ¶¶ 11-13.)

Several months later, in early 2018, Defendant began to encourage Friedman to invest in Blackline. He emailed Friedman on September 9, 2018 ("September 2018 Email"), stating:

> We are focused on building at least 10 facilities over the ensuing years that allow for medical grade, organically grown product with relationships to specific research institutes in California, Colorado and Massachusetts.
>
> At least on paper we are spending $5MM to get the first facility built with an anticipated valuation upon completion of $15MM – not bad for the first build. We are moving significant dirt within the month and will be done with the initial build by the end of 2018.

(Complaint, ¶¶ 14-15.) The Complaint does not attach a copy of the September 2018 Email.

2

Venture Verde, LLC ("Venture Verde") is a Colorado limited liability company and a subsidiary of Blackline.  It is responsible for Blackline's real estate and facility construction. (Complaint, ¶¶ 16-17.)

Defendant emailed Friedman on October 12, 2018, encouraging him to invest in Blackline (the "October 2018 Email").  In the October 2018 Email, Defendant put Friedman in touch with Blackline's former Director of Investor Relations, Konni Harrison ("Harrison"). (Complaint, ¶¶ 18-19.)  The Complaint does not attach a copy of the October 2018 Email.

A few days later, Harrison sent Friedman two documents regarding a proposed investment in Blackline: (1) BLMG Holdings Business Portfolio (the "Portfolio"); and (2) Venture Verde Investor Presentation.  (Complaint, ¶ 20.)  The Complaint does not attach a copy of either the Portfolio or the Venture Verde Investor Presentation.

The Portfolio includes the following statements:

The legal global cannabis market is poised for astounding growth of more than 1,000% over the next decade and is estimated to reach $140 billion by 2027;

Blackline provides solutions that no one else does – all under one roof;

Blackline's diverse portfolio of real estate, turnkey controlled environment facilities, land management including water reuse, off-grid alternative energy and patented intellectual property solutions helps clients to accelerate growth, remain compliant, enter new markets and overcome some of the cannabis industry's toughest challenges;

Venture Verde had broken ground on its first facility in Colorado in the third quarter of 2018;

Blackline subsidiary ZenZone is an intellectual property, licensing and trademark organization with compliance, efficiency, proprietary branded and genetic solutions for the cannabis industry;

Blackline subsidiary Scale Momentum is a multi-channel supply chain and advisory services organization providing win-win opportunities by connecting hemp-derivative suppliers and consumer product companies to not only do business, but scale.

3

(Complaint, ¶ 21.)

Based on the representations regarding Blackline's business, Plaintiffs decided to invest in Blackline.  On or around November 13, 2018, Friedman sent completed investor applications for himself and Solomon to the Defendant and Harrison.  (Complaint, ¶¶ 22-23.)

In late November, Defendant sent Friedman wire instructions.  The next day, Plaintiffs wired $145,000 to an account owned by Blackline.  Friedman emailed Harrison to confirm Blackline's receipt of the wire and Harrison confirmed it.  (Complaint, ¶¶ 24-27.)

About a week later, Plaintiffs wired $5,000 to an account owned by Blackline.  Friedman and Solomon had now each contributed half of a $150,000 investment in Blackline.  (Complaint, ¶¶ 28-29.)

Pursuant to the Blackline LLC Agreement, Blackline was to make a $750,000 redemption payment to Plaintiffs within 90 days after the last day of Blackline's 2023 fiscal year.  Blackline has not made a redemption payment (or any payment at all) to Plaintiffs.  (Complaint, ¶¶ 30-32.) The Complaint does not attach a copy of the Blackline LLC Agreement.

In September 2021, Plaintiffs filed a lawsuit in the District Court of Jefferson County Colorado (the "Colorado Case") against the Defendant, Blackline, Venture Verde, Mathew Rhoades ("Rhoades"), Longbison, LLC ("Longbison"), Venckus Real Estate LLC ("Venckus Real Estate") and Rochelle Venckus ("Venckus") (collectively, the "Colorado Case Defendants"). (Complaint, ¶ 9 and Ex. A.)

Plaintiffs learned through discovery in the Colorado Case that:

Blackline is insolvent.

Blackline does not intend to honor its contractual obligation to make a $750,000 redemption payment to Plaintiffs.

Debtor and Rhoades, the two managers of Blackline, are not devoting their full efforts to it. Rather, they are merely following up operational activities where possible.

(Complaint, ¶ 33.)

Based on communications with the Colorado Case Defendants, Blackline meeting minutes and notes, and documents provided by the Defendant and the other Colorado Case Defendants, Plaintiffs have also learned:

Blackline currently has no projects moving forward.

In September 2018, Blackline described its situation as "Cash beyond tight for month of September – no discretionary spending until we get the loan finalized."

On or around September 4, 2018, and continuing through at least November 12, 2018, the Defendant and the other Colorado Case Defendants knew they could not yet break ground on their first facility in Colorado because they had not yet received the permits for the facility.

On or around October 3, 2018, the Defendant and the other Colorado Case Defendants knew that their proposed press release relating to ground breaking on their first facility was on an "indefinite hold."

On or around October 3, 2018, the Defendant and the other Colorado Case Defendants knew that the completion of the first facility in Colorado had been delayed until January 2019, at the earliest.

On or around October 3, 2018, Blackline knew that it still did not have any proprietary products.

On or around November 12, 2018, Blackline knew that its business plan was continuing to evolve and was not yet complete.

On or around November 12, 2018, the Defendant and the other Colorado Case Defendants described Blackline's construction in Colorado as being on a "tight time frame that can only be determined when we finally shake loose the cash – GC will work with us to get us up and operational regardless of ultimate dollars."

At the time Plaintiffs made their $150,000 investment in Blackline, the Defendant and the other Colorado Case Defendants did not intend to honor the obligation in Section III(J) of the Blackline LLC Agreement to make a 5x redemption payment on Plaintiffs' investment.

> To prevent Plaintiffs from collecting on any judgment in the Colorado Case, the Defendant and the other Colorado Case Defendants plan to "fold on the judgment."
>
> Approximately two and a half years after Plaintiffs made their $150,000 investment in Blackline, the Defendant and the other Colorado Case Defendants rewrote the Blackline LLC Agreement to prevent Plaintiffs from recovering their investment and the promised return on their investment.

(Complaint, ¶ 34.)

In addition, as revealed by Blackline's May 13, 2019, meeting notes, the Defendant and the other Colorado Case Defendants knew that they had been telling inconsistent stories to investors and that they did not know what Blackline's real plan was. (Complaint, ¶ 35.)  The Complaint does not attach a copy of these notes.

> Blackline's meeting notes from May 13, 2019, state:
>
> What are we saying to our investors {NOTE: we need to determine what real strategy is moving forward and commit – if pivoting to hemp then commit but there is some heavy lifting to do}.
>
> What's the future look like {NOTE: seems as though we are focusing on Llamajauna – not a BLMG company, as well as hemp processing}.
>
> The Defendant and the other Colorado Case Defendants have to work on one story and stick to that.

(Complaint, ¶ 36.)

When they invested in Blackline, Plaintiffs did not know that the Defendant and the other Colorado Case Defendants had no real plan, that they did not know what their direction was, and that they did not intend to comply with Section III(J) of the Blackline LLC Agreement. (Complaint, ¶ 37.)

The Defendant and the other Colorado Case Defendants concealed this information from Plaintiffs and represented the opposite to Plaintiffs – including that Venture Verde was already

constructing its first facility, that Blackline was operating, and that Plaintiffs would receive the $750,000 redemption payment. (Complaint, ¶ 38.)

The Defendant, as well as Rhoades and Venckus, who are the three voting members of Blackline, each signed the Blackline LLC Agreement, which contains the promised 5x redemption payment provision. (Complaint, ¶ 39.)

The Defendant, as well as Rhoades and Venckus, participated in at least one meeting during which Plaintiffs' $150,000 investment in Blackline was discussed. (Complaint, ¶ 40.)

The Defendant, as well as Rhoades and Venckus, have participated in communications about how to prevent Plaintiffs from collecting on any judgment by, including, but not limited to, "fold[ing] on the judgment." (Complaint, ¶ 41.)

The Defendant, as well as Rhoades and Venckus, have rewritten the terms of the Blackline LLC Agreement to prevent Plaintiffs from recovering their investment and the promised return on their investment. (Complaint, ¶ 42.)

### III.    LEGAL DISCUSSION

To defeat a motion to dismiss, a complaint must describe the claim in enough detail to give notice to the defendant. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, it must be "plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint need only offer "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2) (made applicable to adversary proceedings by Fed. R. Bankr. P. 7008), unless the subject matter of that pleading implicates a heightened standard, *see* Fed. R. Civ. P. 9. The circumstances supporting an action sounding in fraud or

7

mistake must be articulated with particularity under Rule 9.  According to Rule 9 (made

applicable to adversary proceedings by Fed. R. Bankr. P. 7009), "[i]n alleging fraud or mistake, a

party must state with particularity the circumstances constituting fraud or mistake."

Our Circuit has instructed its lower courts that when alleging fraud, a complaint must

contain "the identity of the person making the misrepresentation, the time, place, and content of

the misrepresentation, and the method by which the misrepresentation was communicated to the

plaintiff." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quotation omitted).  But Rule 9 is

read in conjunction with Rule 8, which requires only a "short and plain statement of the claim[.]"

Therefore, a complaint need not describe the details of the fraudulent conduct "as a journalist

would hope to relate them to [the] general public.  It is only necessary to set forth a basic outline

of fraud in order to alert the defendant of the purported fraud he is defending against." *Gasunas*

*v. Yotis* (*In re Yotis*), 521 B.R. 625, 634 (Bankr. N.D. Ill. 2014) (quotation omitted).

## A. Count I

The first count of the complaint is brought under 11 U.S.C. § 523(a)(2)(A):

(a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of
this title does not discharge an individual debtor from any debt-- …

(2) for money, property, services, or an extension, renewal, or refinancing
of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other
than a statement respecting the debtor's or an insider's financial
condition[.]

For their claim for relief under § 523(a)(2)(A) based on false pretenses or a false

representation to survive a motion to dismiss, Plaintiffs must plausibly allege: (1) Defendant

made a false representation or omission; (2) he knew that representation was false or he made it

with reckless disregard for the truth; (3) he made the statement with the intent to deceive

Plaintiffs; and (4) Plaintiffs justifiably relied on the representation.  *See Ojeda v. Goldberg*, 599

F.3d 712, 716-17 (7th Cir. 2010); *Handler v. Moore* (*In re Moore*), 620 B.R. 617, 627 (Bankr. N.D. Ill. 2020).

Plaintiffs argue in their Response that they have pleaded sufficient allegations to support a claim for relief based on false pretenses. *See* Response, pp. 4-9.

> [A] false representation is an express misrepresentation that can be demonstrated either by a spoken or written statement or through conduct…. In contrast, false pretenses in the context of section 523(a)(2)(A) include implied misrepresentations or conduct intended to create or foster a false impression. The implication arises when a debtor, with the intent to mislead a creditor, engages in a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or ... understanding of a transaction, in which [the] creditor is wrongfully induced by [the] debtor to transfer property or extend credit to the debtor[.]

*Moore*, 620 B.R. at 627-28 (quotations and citations omitted). *See CR Adventures LLC v. Hughes* (*In re Hughes*), 609 B.R. 789, 803 (Bankr. N.D. Ill. 2019) ("The essential nature of the claim, its 'key character,' is a series of events or communications that collectively create a false impression and induce someone to part with money or property.") (quotation omitted).

The court will consider the well-pleaded allegations in the Complaint to determine whether it contains all of the elements required to establish a plausible claim for relief under § 523(a)(2)(A).

1. **The representations in the Portfolio will not be considered because the Complaint does not allege that Harrison was Defendant's agent**

In determining which allegations to consider, the court will first address Defendant's argument that any statements found in the Portfolio are not actionable because Harrison, and not the Defendant, sent the Portfolio to Friedman.

Plaintiffs contend that Harrison's representations in the Portfolio can be imputed to Defendant because she was his agent. *See Sullivan v. Glenn* (*In re Glenn*), 502 B.R. 516, 538 (Bankr. N.D. Ill. 2013) ("[A] creditor can rely on agency principles to impute an agent's fraud to

a debtor."), *aff'd*, 526 B.R. 731 (N.D. Ill. 2014), *aff'd*, 782 F.3d 378 (7th Cir. 2015).[1] They point out that the Complaint alleges that Defendant put Harrison into contact with Plaintiffs, so the reasonable inference to draw from that allegation is that "either (i) the Debtor ratified Harrison's statements; (ii) the statements found in the Portfolio were published at the Debtor's direction, given his status as a managing member of Blackline; or (iii) that such statements were resuscitations of representations that the Debtor had already made." Response, p. 4.

It is possible that Harrison was Defendant's agent and that the statements in the Portfolio could be attributed to him. Plaintiffs correctly point out that whether Harrison was Defendant's agent can be proven through evidence introduced at trial. But on a motion to dismiss, there must be allegations *in the complaint* to support this possibility, and there are none. All we know from the Complaint is that Defendant encouraged the Plaintiffs to invest in Blackline, and then put them in touch with Blackline's director of investor relations. From these sparse allegations, the court cannot reasonably draw the inference that Harrison was Defendant's agent.

If there is no reasonable inference that Harrison was Defendant's agent, then he could not ratify her statements, as Plaintiffs suggest in the Response. Neither is it reasonable to infer that "the statements found in the Portfolio were published at the Debtor's direction, given his status as a managing member of Blackline," or that any statements from Harrison "were resuscitations of representations that the Debtor had already made." Response, p. 4. In determining whether the Complaint plausibly states a claim for relief, then, the court will not consider any of the allegations based on statements in the Portfolio.[2]

---

[1] Plaintiffs also cite three decisions involving a debtor's liability for the fraud of a partner. Blackline was a limited liability company, not a partnership. Even if a member's debt may be nondischargeable because of another member's fraud, there was no allegation in the complaint that Harrison was a member of the LLC.

[2] According to Paragraph 21 of the Complaint, these statements are:

The court will allow Plaintiffs to amend the Complaint to allege that Harrison was Defendant's agent, if they are able to do so.  Even if Plaintiffs can make those changes, however, they should be mindful of the Seventh Circuit's statement that an agent's fraud is not automatically the basis for a finding of nondischargeability:

> The issue is whether their agent's fraud is grounds for denying them their discharge in bankruptcy. Sullivan is emphatic that it is. His opening brief declares that "nondischargeability ... does not turn on whether the debtor himself did something bad" – "guilt or innocence has nothing to do with it." In other words you can do nothing bad but still be denied a discharge in bankruptcy – no fresh start for the innocent. As Sullivan nostalgically remarks, "Contrary to popular belief, bankruptcy was initially created for the benefit and protection of creditors, not debtors." Yes, and debtors used to be sent to prison.
>
> We don't think that Chung's fraud should result in the denial of the Glenns' discharge in bankruptcy.  Proof that a debtor's agent obtains money by fraud does not justify the denial of a discharge to the debtor, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud.

*Sullivan v. Glenn*, 782 F.3d 378, 381 (7th Cir. 2015) (quotation omitted).

---

The legal global cannabis market is poised for astounding growth of more than 1,000% over the next decade and is estimated to reach $140 billion by 2027;

Blackline provides solutions that no one else does – all under one roof;

Blackline's diverse portfolio of real estate, turnkey controlled environment facilities, land management including water reuse, off-grid alternative energy and patented intellectual property solutions helps clients to accelerate growth, remain compliant, enter new markets and overcome some of the cannabis industry's toughest challenges;

Venture Verde had broken ground on its first facility in Colorado in the third quarter of 2018;

Blackline subsidiary ZenZone is an intellectual property, licensing and trademark organization with compliance, efficiency, proprietary branded and genetic solutions for the cannabis industry;

Blackline subsidiary Scale Momentum is a multi-channel supply chain and advisory services organization providing win-win opportunities by connecting hemp-derivative suppliers and consumer product companies to not only do business, but scale.

**2. The remaining allegations in the Complaint do not plausibly allege a claim for relief under § 523(a)(2)(A)**

In determining whether the Complaint plausibly alleges a claim for relief, the court will not consider the statements in the Portfolio. The question that remains is whether the other well-pleaded allegations in the Complaint support the reasonable inference that Defendant made implied misrepresentations or engaged in conduct intended to create or foster a false impression, with the intent to mislead Plaintiffs, and which wrongfully induced them to transfer property.

In paragraph 15 of the Complaint, Plaintiffs allege that in the September 2018 Email Defendant wrote:

> We are focused on building at least 10 facilities over the ensuing years that allow
> for medical grade, organically grown product with relationships to specific
> research institutes in California, Colorado and Massachusetts.

This statement is nothing more than a vague promise about what Blackline hopes to accomplish in the future. Promises regarding future actions are actionable only if made with the present intent not to perform. *See The Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 596 (2001) ("Since a promise necessarily carries with it the implied assertion of an intention to perform, it follows that a promise made without such an intention is fraudulent[.]") (quotation omitted); *Perlman v. Zell*, 185 F.3d 850, 852 (7th Cir. 1999) ("Breach of contract is not fraud; only making a promise with the intent not to keep it deserves that epithet.") (citations omitted).

There are no allegations in the Complaint that at the time he made this statement Defendant did not believe this was Blackline's focus. Plaintiffs allege that at a meeting in May 2019, someone made a note that Blackline's focus was drifting. *See* Complaint, ¶ 36. Those

12

notes were taken about eight months after the September 2018 Email, and there is no allegation

that Defendant was even present at that meeting.[3]

In that same September 2018 Email, Defendant also wrote:

At least on paper we are spending $5MM to get the first facility built with an
anticipated valuation upon completion of $15MM – not bad for the first build.
We are moving significant dirt within the month and will be done with the initial
build by the end of 2018.

Again, this is a promise about future action. Defendant did not tell Plaintiffs that

Blackline had already spent money; he admitted that it was only a plan *on paper* to spend $5

million. Even if this statement was contrary to Blackline's description in September 2018 of its

situation as "cash beyond tight," it was merely a promise. Cash may have been tight for the

month of September, and Blackline may have put discretionary spending on hold, but the

remainder of Blackline's note states that spending can resume when "we get the loan finalized."

The reasonable inference from this statement is that at the time Defendant made promises about

Blackline's future, he had the present intent to fulfill those promises.

Defendant stated in the September 2018 Email that construction would start "within the

month." Plaintiffs allege that this was a misrepresentation because Defendant "knew they could

not yet break ground on their first facility in Colorado because they had not yet received the

permits for the facility." But Defendant had not promised that construction had already begun,

only that it would start within the month. That promise is not inconsistent with waiting for

permits to be issued.

Similarly, Defendant stated in the September 2018 Email that Blackline "will be done

with the initial build by the end of 2018." This was also just a promise about future action, not a

---

[3] In his Reply, Defendant refers to the "May meeting transcript[.]" Reply, p. 3. There is no transcript attached to the
Complaint.

statement of present fact.  While two months later Blackline's construction schedule was described as being on a "tight time frame that can only be determined when we finally shake loose the cash[,]" that description is neither inconsistent with Defendant's promise nor does it lead to the reasonable inference that Defendant's promise was made without the intent to perform.  Like the earlier statement about Blackline's focus, none of these allegations – not separately, and not together – support a plausible claim for relief under § 523(a)(2)(A).

Although the Complaint contains numerous references to a promised redemption payment of $750,000, that promise is in the Blackline LLC Agreement.  The Complaint contains no allegation that Plaintiffs saw the Blackline LLC Agreement before they made their investment.  The Motion to Dismiss assumes that Plaintiffs executed the Blackline LLC Agreement in November 2018, but there are *no allegations in the Complaint* to support that assumption.  Although Plaintiffs allege that Defendant did not intend to honor the obligation, without any allegations that Plaintiffs saw the Blackline LLC Agreement before they made their investment, it is not plausible that this promise of a $750,000 redemption was a misrepresentation Defendant made to Plaintiffs.

Plaintiffs allege that Defendant emailed them on October 12, 2018, further encouraging their investment.  Plaintiffs also allege that Defendant knew certain facts before he sent the October 2018 Email: that a proposed press release relating to the groundbreaking was on an indefinite hold; that the completion of the first facility was delayed until January 2019 at the earliest; and that Blackline still did not have any proprietary products.  They did not attach a copy of the October 2018 Email, however, and provided no details about it except that Defendant put Friedman in touch with Harrison.  Did the October 2018 Email make representations about any of those facts Defendant allegedly knew but kept to himself?  Did Defendant conceal certain

14

facts that created or fostered a false impression in the October 2018 Email?  Without knowing what Defendant wrote in the October 2018 Email, it is impossible for the court to make a reasonable inference about what he concealed regarding present facts.

The representations in the October 2018 Email and the promised redemption in the Blackline LLC Agreement might support a plausible claim for relief under § 523(a)(2).  As the Complaint stands today, however, the allegations do not rise to the level of particularity required to allege that Defendant's debt to Plaintiffs is the result of false pretenses.  The court will allow Plaintiffs leave to amend the Complaint to conform with this opinion, if it is possible to do so.

### 3. **Defendant's remaining arguments**

Although the court has concluded that the Complaint does not state a plausible claim for relief under § 523(a)(2) and will dismiss Count I, Plaintiffs are being granted leave to amend. Therefore, with considerations of efficiency and judicial economy in mind, the court will address Defendant's other points.

### a.  **Allegations that do not support a claim for relief will be ignored, not "dismissed"**

Defendant argues that certain paragraphs in the Complaint do not support a claim for relief under § 523(a)(2)(A).  He contends that his representations regarding Blackline's business operations and the redemption contract are not actionable.  He asserts that "allegations of misrepresentation regarding strategy and focus should be dismissed" because "Plaintiffs do not identify what 'strategy' or 'focus' Defendant told Plaintiffs about[.]" Motion, p. 9.  He argues that paragraphs 35 and 36 describe a meeting that took place *after* Plaintiffs invested in Blackline and that the promised redemption cannot be a false representation because the obligation to pay it is not due until after the 2023 fiscal year.

Complaints often contain allegations that are superfluous, or which discovery reveals to be tangential to the relief sought.  The purpose of a motion to dismiss, however, is for the court

15

to consider whether all of the allegations taken together could plausibly support a claim to relief. Allegations that do not contribute to the court's analysis will simply be ignored.

### b.  Intent to deceive

To state a claim for relief under § 523(a)(2)(A), a complaint must plausibly allege that the defendant intended to deceive the plaintiff.  Defendant argues that Plaintiffs failed to allege he intended to deceive them at the time he solicited their investment, in the fall of 2018.

Paragraph 62 of the Complaint alleges that "Debtor's false representations regarding the business of Blackline and the defendants in the District Court Case were made with the intention to deceive the Plaintiffs to invest in Blackline."  Unlike fraud, "intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Plaintiffs are required only "to make sufficient allegations to make an inference of fraudulent intent plausible[.]" *Econocare, Inc. v. Spyropoulos* (*In re Spyropoulos*), 632 B.R. 646, 652 (N.D. Ill. 2021).  If Plaintiffs amend the Complaint to allege sufficient false representations, this allegation in paragraph 62 could pass the low standard of a motion to dismiss.  That would allow the Complaint to go to trial, at which Plaintiffs' burden of proving Defendant intended to deceive them will be higher.

### c.  Reliance

To state a claim for relief under § 523(a)(2)(A), a complaint must plausibly allege that the plaintiff justifiably relied on the defendant's representations.  "This element does not impose an affirmative duty on the creditor to investigate….  There are no alleged facts that indicate [the creditor] was asleep at the wheel[.]" *Republic Bank of Chicago v. Poulos* (*In re Poulos*), 2021 WL 3674647, at *4 (Bankr. N.D. Ill. Aug. 18, 2021).  Defendant argues that Plaintiffs' allegation of reliance was not sufficient.

In paragraphs 64 to 66, Plaintiffs allege that if Defendant had not made representations to them, they would not have invested in Blackline. In reliance on those representations, Plaintiffs put $150,000 into Blackline. We know from the Complaint that Defendant described Blackline's business to Plaintiffs, including its construction projections. He put Plaintiffs in touch with Blackline's former Director of Investor Relations. Although the Complaint has not sufficiently alleged that these representations constitute false representations or false pretenses, it is plausible that Plaintiffs justifiably relied on them in making their investment. It is a low bar to allege justifiable reliance, and the Complaint satisfies it.

The arguments Defendant makes in the Motion to Dismiss – that Plaintiffs should have known that Blackline was an early-stage company which presented a high investment risk, that they could have reached out to verify that construction was ongoing before making their wire transfer – may find traction at a trial when the court considers all of the evidence regarding whether Plaintiffs' reliance was justifiable. For now, Plaintiffs have plausibly alleged that they justifiably relied on Defendant's representations.

### d. Financial condition

Plaintiffs allege that because Blackline described its own financial condition in September 2018 as "[c]ash beyond tight," Defendant's representations about Blackline's financial health were false. *See* Complaint, ¶ 34(b). Defendant argues that this contention has two flaws. First, that Plaintiffs did not identify a specific representation Defendant made about Blackline's financial condition which could have been false. Second, that a statement about financial condition cannot support a claim under § 523(a)(2)(A). *See* Motion to Dismiss, p. 11-12.

17

Defendant is correct that § 523(a)(2)(A) carves out representations "respecting the

debtor's or an insider's financial condition[.]" But motions to dismiss cannot be used to excise

redundant or superfluous allegations or to craft an ideal complaint.  To the extent necessary, a

motion to strike can accomplish that result.  *See* Fed. R. Civ. P. 12(f), made applicable by Fed. R.

Bankr. P. 7012.

A motion to strike, however, is unnecessary.  To the extent there are allegations that

Defendant made representations about Blackline's financial condition, the court can simply

ignore them if they do not support a claim under § 523(a)(2)(A).  When it comes time for trial on

the Complaint, if Plaintiffs seek to introduce evidence regarding Blackline's financial condition,

Defendant may choose to bring a motion in limine.  Or Plaintiffs may seek to amend the

Complaint to conform to the evidence.  But these are not considerations that must be resolved on

a motion to dismiss.

For all of the reasons stated above, the court will grant the motion to dismiss Count I.

Plaintiffs are allowed leave to amend the Complaint as discussed herein.

## B. Count II

Plaintiffs assert in Count II that Defendant breached his fiduciary duties to them, and that

his debt to Plaintiffs is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(4):

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of
> this title does not discharge an individual debtor from any debt-- …
>
> > (4) for fraud or defalcation while acting in a fiduciary capacity,
> > embezzlement, or larceny[.]

To plead a claim for relief under § 523(a)(4), a creditor must plausibly allege that: (1) the

debtor acted as a fiduciary when the debt was created; and (2) the debt was caused by fraud or

defalcation.  *See Estate of Cora v. Jahrling* (*In re Jahrling*), 816 F.3d 921, 925 (7th Cir. 2016).

18

The Supreme Court has instructed lower courts that this reference to fiduciary capacity in § 523(a)(4) is "strict and narrow." *Follett Higher Educ. Grp., Inc. v. Berman* (*In re Berman*), 629 F.3d 761, 767 (7th Cir. 2011) (quoting *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)).  In fact, fiduciary relationships that qualify under § 523(a)(4) arise in just two situations: (1) an express trust; or (2) an implied fiduciary status arising from a contractual relationship.  *Id.* at 769.  Moreover, the relationship must "impose[] real duties in advance of the breach."  *Matter of Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994).

Plaintiffs neither allege nor argue that there was an express trust.  *See* Response, p. 9 ("[D]espite the Debtor's assertions, the discharge exception for debts incurred through fiduciary fraud or defalcation is not limited to express trusts[.]").  Plaintiffs allege that "[a]t all relevant times, the Debtor was acting as a fiduciary to Plaintiffs in his role as manager of Blackline…. [T]he Debtor was also acting as a fiduciary to Plaintiffs due to the confidential relationship between the Debtor and Mr. Friedman relating to Plaintiffs' potential investment in Blackline." Complaint, ¶¶ 72-73.  They contend that a fiduciary relationship existed here because of "a difference in knowledge or power" between Defendant and Plaintiffs which gave Defendant "a position of ascendancy" over them.  Response, pp. 9-10.

It is settled law in this Circuit that "the distinction between the fiduciary relation that imposes real duties in advance of the breach and the fiduciary relation that does not … [is] that the first group of cases involve a difference in knowledge or power between fiduciary and principal which … gives the former a position of ascendancy over the latter." *Marchiando*, 13 F.3d at 1116 (citation omitted).  Such relationships include those between attorney and client, director and shareholder and managing and limited partners.  "These are all situations in which

19

one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals." *Id.*

Plaintiffs argue that their allegations that Defendant was a member-manager of Blackline who solicited investments for his company imposed a fiduciary duty on him. *See* Response, p. 10. He breached that fiduciary duty by failing to disclose information regarding Blackline's financial condition and plans of operation, and by rewriting the terms of the Blackline LLC Agreement.

In support of their argument, Plaintiffs cite *Catrambone v. Adams*, 498 B.R. 839 (N.D. Ill. 2013), and *Pappas v. Gucciardo* (*In re Gucciardo*), 577 B.R. 23 (Bankr. E.D.N.Y. 2017). Neither of those decisions, however, found a fiduciary relationship that existed between the manager of an LLC and a potential investor. In *Catrambone*, the plaintiff and defendant were business partners, each holding a fifty percent interest in a corporation. In *Gucciardo*, the defendant's fiduciary duties to the plaintiffs arose when the corporation of which she was the sole shareholder became insolvent. Here, the allegations in the Complaint regarding failure to disclose information *prior* to Plaintiffs making their investment do not support a claim under § 523(a)(4).

But Plaintiffs also allege that Defendant rewrote the Blackline LLC Agreement approximately two and a half years after they invested, in order "to prevent Plaintiffs from recovering their investment and the promised return on their investment." Complaint, ¶¶ 34(k), 42. At that time, the Complaint alleges, Defendant was a manager of Blackline and Plaintiffs were investors. It is a reasonable inference from these allegations that Defendant knew much more about Blackline than Plaintiffs did. If given the opportunity to present evidence in support of these allegations at trial, Plaintiffs might be able to prove that Defendant owed them a

20

fiduciary duty because of the "difference in knowledge or power" between them which gave Defendant "a position of ascendancy" over Plaintiffs.

If Defendant owed Plaintiffs a fiduciary duty, then proving that he participated in rewriting the Blackline LLC Agreement to Plaintiffs' detriment could plausibly be a breach of that fiduciary duty. That standard of proof, however, is reserved for trial. At this time, Plaintiffs have alleged sufficient allegations to survive a motion to dismiss Count II. The court will deny the motion to dismiss this count.

## C. Count III

Plaintiffs also bring Count III under § 523(a)(4), but in the title they describe this claim for relief as "Securities Fraud." They allege that Defendant induced them "to purchase securities in Blackline recklessly, knowingly, or with an intent to defraud Plaintiffs in violation of C.R.S. § 11-51-501(1)." Complaint, ¶ 101.

Plaintiffs make no allegations in this count that conform to the requirements of § 523(a)(4), which excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." To the extent Plaintiffs might be able to prove that Defendant owed them a fiduciary duty after they made their investment, as discussed in Section B above, this count alleges an injury only in connection with the sale of the membership interest. Therefore, the court will dismiss Count III.[4]

---

[4] There is a subsection of 11 U.S.C. § 523(a) that excepts from discharge certain debts for the violation of securities laws:

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- …
>> (19) that--
>>> (A) is for--
>>>> (i) the violation of any of the Federal securities laws (as that term is defined in section 3(a)(47) of the Securities Exchange Act of 1934), any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or

**D. Count IV**

Plaintiffs assert in Count IV that Defendant's conduct caused a willful and malicious injury to them, and that his debt to Plaintiffs is therefore nondischargeable pursuant to 11 U.S.C. § 523(a)(6):

> (a) A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
>
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

To plead a claim for relief under § 523(a)(6), Plaintiffs must plausibly allege that the Defendant acted with the actual intent to cause injury.  *See Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  As our Circuit later explained, "a willful and malicious injury, precluding discharge in bankruptcy of the debt created by the injury, is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa–Nicolai v. Larsen*, 677 F.3d 320, 324 (7th Cir. 2012).

Defendant argues in the Motion to Dismiss that Plaintiffs have not alleged the intentional tort required to maintain a plausible claim for relief under 11 U.S.C. § 523(a)(6).  *See Jendusa-Nicolai*, 677 F.3d at 322 ("[i]ndeed, not even all intentional torts are covered").

---

(ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
(B) results, before, on, or after the date on which the petition was filed, from--
(i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding;
(ii) any settlement agreement entered into by the debtor; or
(iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

To survive a motion to dismiss, a claim for relief brought under § 523(a)(19) must contain allegations that satisfy both subsection (A) and subsection (B).  Count III does not contain any allegation that Plaintiffs' claim against Defendant results from a judgment, settlement agreement or court order, as required by § 523(a)(19)(B).

Plaintiffs did not dispute Defendant's argument and in fact made no reference to § 523(a)(6) in the Response.  The court will grant the motion to dismiss Count IV.

## IV.   CONCLUSION

For the reasons stated above, the court will grant the Motion to Dismiss as to Counts I, III and IV, and deny the Motion to Dismiss as to Count II.  Plaintiffs will be allowed leave to amend the Complaint as set forth in this Memorandum Opinion.

ENTERED:

Date:   September 16, 2022

_____
DAVID D. CLEARY
United States Bankruptcy Judge

23